# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD CHARLESTON, ) | |
| ) | No. 12-cv-9463 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Suzanne B. Conlon |
| ) | |
| BOARD OF TRUSTEES OF THE ) | |
| UNIVERSITY OF ILLINOIS AT CHICAGO; ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, The Board of Trustees of the University of Illinois (misnamed herein as "Board of Trustees of the University of Illinois at Chicago" but hereinafter the "University"), James W. Hall, Paula Allen-Meares, Ralph Kehl and Nancy Wozniak (together collectively referred to as the "Individual University Defendants"), by their attorneys Norman P. Jeddeloh and Elizabeth A. Thompson (Arnstein & Lehr LLP, *of counsel*), submit the following Memorandum in Support of their Motion to Dismiss Plaintiff Gerald Charleston's ("Charleston") Complaint:

## INTRODUCTION

Dissatisfied with his proper termination from the University's College of Medicine for academic dishonesty and unprofessional conduct, Charleston brings a myriad of claims both under 42 U.S.C. § 1983 and under state common law against the University and numerous University academics. Each of these claims is legally deficient and must be dismissed for the following reasons:

- Charleston's procedural due process claim is legally deficient because, considering the academic nature of the decision involved, he has received more process than he was due under the Fourteenth Amendment;

- Charleston's barebones substantive due process claim fails because the pursuit of a graduate medical education is not a fundamental right entitling him to substantive due process protection and the University's conduct does not "shock the conscience," a necessary element of a substantive due process claim.

- Charleston's equal protection claim fails because he does not identify the "similarly situated parties" to which he compares himself or provide any factual support for the allegations of different treatment.

This case is also legally deficient because claims against the University and the Individual University Defendants are barred by the Eleventh Amendment and doctrines of sovereign immunity, and further, as to the Individual University Defendants, by qualified immunity. Even if the breach of contract and intentional infliction of emotional distress counts were cognizable in this Court, the Complaint as pleaded fails to allege the elements of the claims. The Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Charleston was dismissed from the University's College of Medicine in January of 2011 for unprofessional conduct. (Compl. ¶ 16.) His dismissal was the result of a complaint filed by Doctors Kehl and Wozniak alleging that Charleston had committed errors on his written work, had plagiarized patient histories and physical reporting, did not complete written quizzes in a timely manner, and did not perform well enough to pass his Obstetrics and Gynecology rotation. (*Id.* ¶ 18.)[1] This complaint was forwarded to the Urbana Student Progress and Promotions Committee ("USPPC") for review. (*Id.* ¶ 19.) Charleston was permitted to and did submit a letter to the USPPC regarding the allegations. (*Id.* ¶ 20.)

---

[1] The University and the Individual University Defendants do not agree with the recitation of numerous facts in the complaint such as these allegations, but acknowledge that, for purposes of this motion, the Court will assume them to be true.

2

Thereafter, the complaint and Charleston's letter, as well as another letter drafted by Dr. Hall from 2008, were submitted to the Urbana Executive Committee ("UEC"). (*Id.* ¶ 22.) Dr. Hall's letter stated that Charleston had also acted unprofessionally in 2008 while performing his duties as a Teaching Assistant in a Molecular Biology course. (*Id.* ¶ 23.) The UEC decided that, based upon Charleston's overall conduct, including this prior incident, he should be dismissed from the College of Medicine. (*Id.* ¶ 24.) Charleston appealed this decision, but the decision was upheld by the College Committee on Student Promotions ("CCSP") and Charleston was terminated from the College. (*Id.* ¶ 26.) This decision was again upheld on appeal on January 28, 2011. (*Id.* ¶ 27.) Charleston now brings five separate claims relating to this action under both 42 U.S.C. § 1983 and state law: (1) violation of procedural due process (Count I); (2) violation of substantive due process (Count II); (3) violation of equal protection (Count III); (4) breach of contract (Count IV); and (5) intentional infliction of emotional distress (Count V).

## **STANDARD FOR GRANTING THIS MOTION**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a claim based upon the plaintiff's failure to state a claim upon which relief can be granted. In order to survive a 12(b)(6) motion to dismiss, the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers "labels and conclusions" or only a "formulaic recitation of the elements of a cause of action" will not withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In ruling on a motion to dismiss, a court need not

3

accept as true legal conclusions or unsupported conclusions of fact. *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002).

## ARGUMENT

**A. Charleston's claim for denial of procedural due process should be dismissed because he has no protectable interest and he was granted more process than he was due.**

A procedural due process claim requires a two step analysis: (1) was the plaintiff deprived of a protected interest; and (2) if so, what process is due. *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004).

As to the first element, Charleston alleges only that he "has a clearly established right to equal access to all benefits and privileges of a public higher education and a right to be free from said illegal practices and policies." (Compl. ¶ 32.) This conclusory allegation is insufficient to establish a protectable interest. To the contrary, neither the Supreme Court nor the Seventh Circuit has held that there is a constitutional right to continued enrollment in a post-secondary education program. *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 3d 783, 787 (S.D. Ind. 2011), *aff'd* 692 F.3d 828 (7th Cir. 2012). In fact, in *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008), the Seventh Circuit stated:

> The plaintiffs' problem in this case, and the justification for the district court's dismissing their due process claim without awaiting the presentation of evidence, is that they premise the claim entirely on the bald assertion that any student who is suspended from college has suffered a deprivation of constitutional property. *That cannot be right.* And not only because it would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted, but also because the Supreme Court requires more. It requires, as we know, proof of an entitlement….

(emphasis added); *see also Park*, 781 F. Supp. 2d at 788 (finding no deprivation of a protected interest where plaintiff was expelled from dental school).

4

Even if Charleston could establish that he had a protectable interest in continued enrollment at the University, his Complaint still fails to assert a valid due process claim. He avers that the University violated his due process rights when it failed "to allow Plaintiff a hearing, to be present and defend himself from the allegations against him, to confront the witnesses against him [and] to address any of the evidence presented against him" (Compl. ¶ 34.) But Charleston was not entitled to such extensive process, considering that his was a dismissal for academic reasons. In the context of medical school, an academic dismissal is "one that involves 'a school's determination of whether a student will make a good doctor.'" *Fenje v. Feld*, 398 F.3d 620, 624 (7th Cir. 2005).[2] Charleston's Complaint actually concedes that he was dismissed based on his academic performance. (*See, e.g.*, Compl. ¶ 33 (defendants filed "a complaint of academic dishonesty").)

The law distinguishes between academic dismissals and disciplinary dismissals in deciding what process is due. *Hlavacek v. Boyle*, 665 F.3d 823, 826 (7th Cir. 2011). Dismissals for poor academic performance require no hearing at all. *Id.*; *see also Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978) ("[W]e decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing."); *Fenje*, 398 F.3d at 626 ("In the case of academic dismissals, procedural due process does not require any form of hearing before a decision-making body, either before or after the termination decision is made."). Instead, it is constitutionally sufficient that the student was informed of the nature of the faculty's dissatisfaction and the ultimate decision to dismiss was careful and deliberate. *Hlavacek*, 665 F.3d at 826. This rule arises from the fact that the faculty of a

---

[2] Disciplinary dismissals are those involving the violation by a student of valid rules of comportment. *Id.* at 625.

10688010.2

graduate school is the best judge of its students' academic ability and performance and their ability to master the required curriculum. *Horowitz*, 435 U.S. at 86 n.2.

Charleston's Complaint establishes that the University met these due process requirements for academic dismissal. He actually was afforded much more process than he was due. *See Pugel*, 378 F.3d at 666 (dismissing due process claim where plaintiff's "complaint itself establishe[d] that [plaintiff] received … due process."). Charleston concedes that he was permitted to submit a letter to the initial committee considering the complaints made against him, which indicates that he received notice that a complaint was made. (Compl. ¶ 20.) Thereafter, Charleston "exhausted his administrative appeals," appealing no less than four times. (*Id.* ¶¶ 16, 24-27.) Each level of appeal upheld the decision to terminate Charleston from the program. (*Id.*) The various opportunities and levels of appeal render the University's ultimate decision to terminate Charleston from the program careful and deliberate. *See Hlavacek*, 665 F.3d at 826 (finding several levels of appeal sufficient protection).

Charleston also contends that the University violated his due process rights because it failed to "comply with its own policies and due process protections set forth in its Student Disciplinary Policy by forwarding a complaint of academic dishonesty, i.e., plagiarism to the USPPC without intermediate review of a Student Discipline Subcommittee" (Compl. ¶ 33). This averment does not state a claim for violation of the Fourteenth Amendment due process requirement, but at best a state law breach of contract claim. The Seventh Circuit has stated: "As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as state law) is not a denial of due process, even if the state law confers a procedural right." *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993); *see also Pugel*, 378 F.3d at 666.

10688010.2

Accordingly, Count I of Charleston's Complaint must be dismissed with prejudice.

**B. Charleston's claim for violation of substantive due process fails as a matter of law.**

Count II of Charleston's Complaint alleges that his substantive right to due process was violated by Defendants' "arbitrary and capricious" actions. (Compl. ¶ 41.) Again, this allegation is insufficient. While the Due Process Clause provides heightened substantive due process protection against government interference with certain fundamental rights and liberty interests, *Park v. Ind. Univ. Sch. of Dentistry*, 682 F.3d 828, 832 (7th Cir. 2012), the right to pursue a particular career is not a fundamental right or liberty interest protected by the Due Process Clause. *Id.* Neither the Supreme Court nor the Seventh Circuit has recognized education as a fundamental right. *Galdikas v. Fagan*, 342 F.3d 684, 688 (7th Cir. 2003), *overruled on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009) ("A graduate student does not have a federal constitutional right to a continued graduate education."). Thus, the allegations in the complaint do not give rise to a fundamental right meriting substantive due process protection.

Assuming *arguendo* that Charleston does have such a fundamental right, he still cannot establish a substantive due process violation. If a fundamental right is properly at issue, the cornerstone of due process is protection against government power arbitrarily and oppressively exercised. *Galdikas*, 342 F.3d at 689. Under this formulation, a constitutionally cognizable claim must "shock the conscience." *Id.* at 690.

The University's conduct in dismissing Charleston from the program after several appeals and an opportunity to present his case was the opposite of such an action. Neither was it arbitrary or capricious. Charleston makes no factual allegations regarding exactly how the University acted arbitrarily and capriciously (so as to arguably "shock the conscience"), and his

7

legal conclusion that it did so is insufficient. *See Bissessur*, 581 F.3d at 602 (finding legal conclusion that university's actions were "arbitrary, capricious, and undertaken in bad faith" insufficient to meet notice pleading standards.). Charleston's Complaint rather establishes that the University acted in a reasoned manner, reviewing his claims that he was wrongfully dismissed multiple times at several levels of appeal. There is no conduct alleged which is "so egregious [and] so outrageous that it may fairly be said to shock the contemporary conscience." *Galdikas*, 343 F.3d at 690.

Accordingly, Count II should be dismissed with prejudice.

**C. Charleston's "class of one" equal protection claim fails to allege similarly situated individuals who were treated differently or provide any factual support for the allegations of different treatment.**

Charleston next alleges that his termination has "resulted in the denial of equal protection rights, as a 'class of one,' in violation of the Fourteenth Amendment." (Compl. ¶ 46.) The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall … deny to any persons within its jurisdiction the equal protection of laws." U.S. CONST. amend XIV, § 1. Generally, the Equal Protection Clause protects members of vulnerable groups from unequal treatment. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). However, it also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a "class of one." *Id.; Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

It is difficult for a plaintiff to succeed on a class of one claim. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To be considered similarly situated, a plaintiff and his comparators (those he alleges were treated more favorably) must be identical or directly comparable in all material respects. *LaBella Winnetka*, 628 F.3d at 942. "It is clear that

8

similarly situated individuals must be very similar indeed." *McDonald*, 371 F.3d at 1002. Where a plaintiff alleges that he was disciplined more harshly than others, "he must show that he is 'similarly situated to persons outside the protected class with respect to performance, qualifications and conduct." *Id*.

For example, in *LaBella Winnetka*, 628 F.3d 937, the Seventh Circuit upheld the dismissal of the plaintiff's complaint for failure to state a claim for class of one equal protection. There, plaintiff owned a restaurant in space it rented from a third party in the Village of Winnetka. *Id.* at 940. The landlord of the building made certain repairs to the restaurant's roof which caused a fire, damaging the roof over plaintiff's main dining room. *Id.* The plaintiff applied for permits to repair the fire damage inside the restaurant, but the Village would not issue any permits until the roof was fixed, nor would it allow the plaintiff to partition off the portion of the restaurant that was damaged and reopen the undamaged area. *Id.* However, the Village did allow another restaurant, Jerry's, which operated out of the same building as the plaintiff, to reopen immediately after the fire. Plaintiff also alleged that the Village allowed a third restaurant, O'Neil's, to remain open while a portion of that restaurant was partitioned off for building repairs. *Id.*

The Seventh Circuit upheld <u>dismissal of the complaint</u>, stating "dismissal at the pleading stage was appropriate because LaBella failed to allege facts tending to show that it was similarly situated to any of the comparators." *Id.* at 942. The other restaurants were not "similarly situated" because first, O'Neils was not undergoing repairs for fire damage and therefore the extent of work done was different, and second, Jerry's roof was not actually damaged by the fire, even though it was in the same building as the plaintiff's restaurant. *Id.* Therefore, the court dismissed the complaint, holding that "plaintiff ha[d] failed to plead facts suggesting that it was

9

treated differently from similarly situated restaurants." *Id.* at 943; *see also Perano v. Township of Tilden*, No. 09-00754, 2010 WL 1462367, at *9-10 (E.D. Pa. Apr. 12, 2010), *aff'd* 423 Fed. Appx. 234 (3d Cir. 2011) (complaint must identify similarly situated parties and specify instances of differing treatment); *Toussie v. Town Board of East Hampton*, No. CIVA 08-1922 DRH WDW, 2010 WL 597469, at *8-9 (E.D. N.Y. Feb. 17, 2010) (class of one claim must include sufficient factual allegations to be "plausible").

Charleston, in a like fashion, fails to identify any individuals (or class of individuals) that were truly similarly situated but treated more favorably than him. Instead, he only makes the conclusory allegation that he was treated "differently than those similarly situated medical students subject to the USPPC review process." (Compl. ¶ 46.) He merely provides an "abstract recitation of the element[] of a cause of action." *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Considering the conclusory nature of the allegations, Charleston does not meet the *Bell Atlantic* plausibility standard. *LaBella Winnetka*, 628 F.3d at 943; *see also Pinedo v. City of Chicago*, No. 10 C 6370, 2011 WL 829305, at *2 (N.D. Ill. Mar. 4, 2011) (dismissing plaintiff's class of one complaint where plaintiff made only the conclusory allegation that he was "similarly situated to other individuals" who "did not receive vehicular tickets, DUI arrests and/or have evidence fabricated against them."); *Muczynski v. Lieblick*, No. 10 C 81, 2011 WL 613573, at *4-7 (N.D. Ill. Feb. 11, 2011) (case dismissed for failure to allege similarly situated individuals); *Austin v. Varga*, No. 10-cv-7355, 2011 WL 3841826, at *4 (N.D. Ill. Aug. 25, 2011) (same).

Count III should be dismissed with prejudice.

10688010.2

**D. The suit against the University and the Individual University Defendants in their official capacities for money damages is barred by the Eleventh Amendment.**

The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. Eleventh Amendment issues arise whenever a private party files a federal lawsuit against a state, a state agency, or a state official. *Hosty v. Governors State Univ.*, 174 F. Supp. 2d 782, 784 (N.D. Ill. 2001). For purposes of Eleventh Amendment immunity, state representatives sued in their official capacity are considered the State and a court is without jurisdiction to hear claims against them. *Id.* at 784-85; *Feldman v. Bahn*, 12 F.3d 730, 732 (7th Cir. 1993).

The University is a state agency and, as such, is entitled to Eleventh Amendment immunity. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 908 (7th Cir. 1991). The University must be dismissed from this lawsuit. As to the Individual Defendants who are sued in their official capacity, all claims for money damages against these Defendants also must be dismissed. Charleston's Complaint is clear that he is suing these Individual Defendants in their "official capacity." (Compl. ¶¶ 3-6.) Furthermore, Charleston specifically requests "an award of monetary damages" from the Individual Defendants (*Id.* ¶¶ 35, 42, 49) and "punitive damages."[3] (*Id.* ¶¶ 37, 43, 51, 64.) These claims must also be dismissed as barred by the Eleventh Amendment.

---

[3] To the extent that Counts IV and V (Plaintiff's state law claims) seek injunctive relief as well as money damages, these counts must be dismissed in their entirety. The *Ex Parte Young* exception to the Eleventh Amendment, which allows state officials to be sued for prospective injunctive relief in federal court, does not reach state law claims, and the Eleventh Amendment therefore acts to bar a federal court from hearing pendent state law claims for injunctive relief. *Moore v. Watson*, 838 F. Supp. 2d 735, 753 (N.D. Ill. 2012).

10688010.2

**E. The suit against the Individual Defendants in their personal capacity is barred by qualified immunity.**

Though personal capacity suits raise no Eleventh Amendment concerns, qualified immunity protects public officials from monetary liability when their conduct does not violate clearly established rights. *Hosty*, 174 F. Supp. 2d at 785 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity typically casts a wide net to protect government officials from damage liability whenever balancing is required. *Feldman*, 12 F.3d at 733. In order for Charleston to recover against the Individual University Defendants in their personal capacity, Charleston must (1) adequately allege the violation of a constitutional right; and (2) that right must be clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002).

As more thoroughly discussed above, Charleston has wholly failed to establish the violation of any constitutional right. Even if the Court finds that there were constitutional violations, the law is not "clearly established" and involves careful balancing of interests. Accordingly, the Individual University Defendants in their personal capacity are entitled to qualified immunity and should be dismissed from this suit.

**F. Charleston's state law claims must be dismissed for lack of jurisdiction and failure to state a claim. This Court does not have jurisdiction over Charleston's breach of contract and intentional infliction of emotional distress claims.**

It is well settled law in Illinois that, based upon principles of Illinois sovereign immunity, Charleston's breach of contract and intentional infliction of emotional distress claims may be brought against the University and Individual University Defendants, if at all, only in the Court of Claims of the State of Illinois. *Ellis v. Bd. of Governors of State Coll. & Univ.*, 102 Ill. 2d 387, 393 (1984); *Kane v. Bd. of Governors of State Coll. & Univ.*, 43 Ill. App. 3d 315, 319 (4th

Dist. 1976).  Where a claim arises solely from the fact of state employment, or when the complained of actions involve matters ordinarily within the employee's normal and official functions, then jurisdiction lies exclusively in the Court of Claims.  *Mgmt. Ass'n of Ill. v. Bd. of Regents of N. Ill. Univ.*, 248 Ill. App. 3d 599, 607 (1st Dist. 1993); *see also Rembis v. Bd. of Trs. of the Univ. of Ill.*, 249 Ill. App. 3d 1, 3 (1st Dist. 1993).  Whether an action must be brought in the Court of Claims is not controlled by the parties named but whether the action is fundamentally against the instrumentality of the state or could expose the instrumentality to liability.  *Healy v. Vauple*, 133 Ill. 2d 295, 308 (1990).

This principle is also repeated in federal law, holding generally that the Eleventh Amendment bars suits against individual state officials based on claims under state law when the state is the real, substantial party in interest, regardless as to whether damages or injunctive relief are sought.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

This Court's supplemental jurisdiction does not extend so far as to permit this Court to adjudicate a claim which, under the Eleventh Amendment, is subject to state sovereign immunity.  *Pennhurst State Sch.*, 465 U.S. 89; *Bricklayers Union Local 21 v. Edgar*, 922 F. Supp. 100, 109 (N.D. Ill. 1996), *see also Mohler v. State of Mississippi*, 782 F.2d 1291, 1294 (5th Cir. 1986); *American Soc'y of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1068 (N.D. Ill. 2001).  Further, the issue of sovereign immunity notwithstanding, this Court should decline jurisdiction since all of the federal claims plaintiff has brought must fail, for all of the reasons stated above.  *See* 28 U.S.C. § 1367 (c) (3); *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1253 (7th Cir. 1994).

Furthermore, and in any event, Count IV fails to state a claim for breach of contract and Count V fails to state a claim for intentional infliction of emotional distress.  In *Bissessur*, 581

13

F.3d 599, the Seventh Circuit upheld the dismissal of a complaint for breach of an implied contract that was almost identical to Charleston's Complaint. The Court stated:

> [Plaintiff's] complaint, however, fails to allege any facts that even remotely relate to this theory. It provides no notice for the basis of [Plaintiff's] claims aside from a mere recitation of their elements. Among other things, it contains no facts concerning: (1) what, if any, promises the University made to [Plaintiff]; (2) how these promises were communicated; (3) what [Plaintiff] promised in return; or (4) how these promises created an implied contract.

*Bissessur*, 581 F.3d at 603-04; *see also Park*, 692 F.3d at 831 (finding that a failure to follow dismissal procedures is not a breach of implied contract).[4] Similarly, here, Charleston's Complaint alleges only that "Plaintiff had an express and implied contract with Defendants…" and that the "actions of Defendants constitute a breach of the express and implied contract." (Compl. ¶¶ 54-55.) These allegations are insufficient to provide the University with notice as to what promises Charleston alleges the University made, how these promises created an implied contract, what consideration Charleston gave in return and how the University allegedly breached any promise.

Similarly, Charleston's Complaint contains no allegations that would state a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the conduct involved was truly extreme and outrageous; (2) the defendant intended his conduct to inflict severe emotional distress or knew that there was a high probability that it would; (3) the conduct in fact caused severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702-03 (7th Cir. 1993) (citing *McGrath v. Fahey*, 126 Ill. 2d 78 (1988)). Liability results only where the conduct is so extreme to go as beyond all possible bounds of decency and no reasonable man could be expected to

---

[4] *Park* analyzed the issue under Indiana law, but the law is similar in Illinois – academic institutions have great discretion in making academic decisions. *See, e.g., Harris v. Adler Sch. of Prof'l Psychology*, 309 Ill. App. 3d 856, 859 (1st Dist. 1999) ("There is no judicial review of academic decisions.").

endure it. *Id.* Charleston's allegations in this regard merely parrot the required elements. Charleston alleges only that the "actions or omissions of Defendants constitute extreme and outrageous conduct that is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and caused Charleston to suffer distress so severe that a reasonable person could not be expected to endure it." (Compl. ¶ 59.) This conclusion is insufficient to state a claim for intentional infliction of emotional distress and Count V, therefore, should be dismissed.

## CONCLUSION

For the above reasons, Charleston's Complaint should be dismissed in its entirety with prejudice.

> Respectfully submitted,
>
> BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS AT CHICAGO; JAMES W. HALL; PAULA ALLEN-MEARES; RALPH KEHL; NANCY WOZNIAK,
>
> By: /s/ Elizabeth A. Thompson
>      One of their attorneys

Norman P. Jeddeloh
Elizabeth A. Thompson
Arnstein & Lehr LLP, *of counsel*
120 South Riverside Plaza
Suite 1200
Chicago, Il 60606
312.876.7100

## Certificate of Service

       Elizabeth A. Thompson, an attorney, certifies that on January 22, 2013, she electronically filed the above **Memorandum in Support of Defendants' 12(b)(6) Motion to Dismiss** with the Clerk of Court by using the CM/ECF system, which sent notification of such filing to all parties of record.

                                                  /s/ Elizabeth A. Thompson