# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD CHARLESTON, | )<br>)<br>) Civil Action No.: 12 C 9463 |
| Plaintiff, | )<br>) Suzanne B. Conlon, Judge |
| v. | ) |
| BOARD OF TRUSTEES OF THE<br>UNIVERSITY OF ILLINOIS AT CHICAGO,<br>*et al.*, | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Gerald Charleston, a former medical student, was dismissed from the University of Illinois College of Medicine in January 2011. He sues the board of trustees ("the board") of the University of Illinois ("the university") and university officials and heads of department in their individual and official capacities ("the individual university defendants") under 42 U.S.C. § 1983 and the Fourteenth Amendment, alleging infringements of his rights to procedural due process (Count I), substantive due process (Count II), and equal protection (Count III), and asserting state law claims for breach of contract (Count IV) and intentional infliction of emotional distress (Count V). He also sues unnamed "John Doe" defendants, who are dismissed because Charleston has failed to serve them with process in the time required under the Federal Rules of Civil Procedure 4(m). The university and individual university defendants move to dismiss all claims under Rule 12(b)(6). For the reasons set forth below, the motion is granted with prejudice as to Counts I, II, and III and granted without prejudice as to Counts IV and V.

## BACKGROUND

The following facts are taken from the complaint. Gerald Charleston was a fourth-year medical student at the University of Illinois College of Medicine during the 2009-2010 academic year. Compl. ¶ 16. He completed his clinical rotation in the Obstetrics and Gynecology ("ob-gyn") department in June 2010. *Id.* ¶ 17. Although Charleston was not aware of any complaints against him for unprofessional misconduct, Dr. Ralph Kehl and Dr. Nancy Wozniak, two of Charleston's instructors during his ob-gyn rotation, complained about him to the College of Medicine on September 12, 2010. *Id.* ¶¶ 17-18. They alleged Charleston committed errors on his written work, including plagiarizing patient history and physical reporting, failed to complete written quizzes until after the rotation ended, failed to obtain physician signatures for his case log, spent four weeks on rotation without an instructor, and failed to perform well enough to pass the rotation. *Id.* They asked that Charleston be required to repeat the rotation. *Id.*

Drs. Kehl and Wozniak's complaint was forwarded to the Urbana Student Progress and Promotions Committee ("Urbana Committee") for review. *Id.* ¶ 19. On October 13, 2010, the Urbana Committee held a meeting regarding the complaint. *Id.* ¶ 20. Charleston was not allowed to attend the meeting, but he was permitted to submit a letter responding to the allegations against him. *Id.* Based on the complaint and Charleston's letter, the Urbana Committee recommended that Charleston be required to meet with a mentor on a monthly basis to ensure similar events would not occur during future clinical rotations. *Id.* ¶ 21.

Unbeknownst to Charleston, the complaint, his response letter, and a 2008 letter from James Hall, the Associate Dean for Student Affairs, were subsequently submitted to the Urbana Executive Committee (the "executive committee"). *Id.* ¶ 22. Hall's letter stated that Charleston

2

had acted "unprofessionally" as a teaching assistant in the School of Molecular Biology in 2008. *Id.* ¶ 23. Charleston was not cited for acting unprofessionally as a teaching assistant. *Id.* He was not allowed an opportunity to respond to Hall's letter. *Id.* On October 27, 2010, the executive committee recommended that Charleston be dismissed from the College of Medicine. *Id.* ¶ 24. Charleston appealed the executive committee's decision, which was upheld and submitted to the College of Medicine Committee on Student Progress ("College of Medicine Committee") for final action. *Id.* ¶ 25. On December 17, 2010, the College of Medicine Committee voted to dismiss Charleston. *Id.* ¶ 26. Charleston was not permitted to challenge the allegations against him before the College of Medicine Committee. *Id.* He appealed, but the decision was upheld on January 28, 2011. *Id.* ¶ 27. On November 27, 2012, Charleston filed suit against the board and the individual university defendants in federal court.

## DISCUSSION

### I. Standard of Review

A complaint must contain a short and plain statement showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations must give defendants fair notice of plaintiff's claim and plausibly suggest plaintiff has a right to relief that rises above a speculative level. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In considering a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). A claim is plausible on its face when it includes factual content sufficient to allow the court to draw a reasonable inference that the defendants are liable for the

misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels and conclusions or a formulaic recitation of the elements will not suffice. *Id.*

## II. Count I - Procedural Due Process

Charleston alleges defendants violated his constitutional right to procedural due process. He contends he has a clearly established right to equal access to the benefits and privileges of a public higher education and the right to be free from illegal practices and policies. He alleges defendants failed to comply with the student disciplinary policy when the complaint accusing him of plagiarism was forward to the Urbana Committee without intermediate review by a student discipline committee. He claims defendants denied him a hearing to defend against the allegations in violation of the student disciplinary policy. He seeks monetary and punitive damages from the individual university defendants and injunctive relief against all defendants. Compl. ¶¶ 35-37. Defendants argue Charleston's claim must be dismissed because he cannot satisfy the required elements of a procedural due process claim.

As an initial matter, Charleston is barred by the Eleventh Amendment from filing suit against the board and from seeking monetary damages from the individual university defendants acting in their official capacities as representatives of the university. *See Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907-08 (7th Cir. 1991) (Board of Trustees of the University of Illinois is a state agency entitled to invoke Eleventh Amendment immunity); *Feldman v. Ho*, 171 F.3d 494, 498 (7th Cir. 1999) (department chair of state university entitled to Eleventh Amendment immunity). This does not end the analysis, however, because Charleston also seeks injunctive relief against the individual university defendants in their official capacities and monetary damages against the individual university defendants in their personal capacities.

Procedural due process guarantees an individual the right to a fair decision-making procedure. In analyzing Charleston's procedural due process claim, the court must determine (1) whether he was deprived of a protected liberty or property interest, and, if so, (2) what process is due. *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002). Charleston has alleged two property interests: (1) an interest in receiving university process prior to being dismissed from medical school; and (2) an interest in continued education in the medical school. Neither presents a cognizable property interest on the facts alleged.

The Fourteenth Amendment does not protect Charleston's interest in receiving the internal process allegedly set forth by the university's student disciplinary policy before dismissal from medical school. *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) ("[Plaintiff's] interest in contractually-guaranteed university process is not protected by the federal Constitution."). There is also no recognized constitutional right to continued enrollment in a post-secondary education program. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Park v. Indiana Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 787-88 (S.D. Ind. 2011) (Lawrence, J.), *aff'd*, 692 F.3d 828 (7th Cir. 2012).

Charleston must therefore establish he had an enforceable contract with the university that created a legally protected entitlement to continued enrollment in medical school, and that his dismissal rose to the level of a constitutional deprivation of that property interest. Charleston's factual allegations are insufficient to establish he had a contract with the university, or the terms of a contract, from which the university's breach can be plausibly inferred. *See Weidmann v. State of Illinois*, 57 Ill. Ct. Cl. 209, 2005 WL 6437815, at *1 (Ill. Ct. Cl. 2005) (medical student suing university for breach of contract required to establish all elements of a

5

contract); *see also Bissessur*, 581 F.3d at 602-04 (identification of a specific promise by the university was necessary to support student's due process claim derived from breach of contract). Even assuming the existence of a contract with the university, a breach by the university would likely not rise to the level of a deprivation of a constitutional right; Charleston has cited no authority suggesting it would. *See Williams v. Wendler*, 530 F.3d 584, 589-90 (7th Cir. 2008) (student's entitlement not to be suspended from post-secondary education "is a matter of the contract, express or implied, between the student and the college"); *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996) ("It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution.").

Charleston's procedural due process claim is foreclosed by the absence of a protected right. The court need not address the second element of the analysis regarding what process is due. Count I is dismissed with prejudice.

### III. Count II - Substantive Due Process

Charleston claims defendants violated his substantive right to due process. He asserts he has a clearly established right to equal access to the benefits and privileges of a public higher education and the right to be free from illegal practices and policies. He alleges defendants' conduct was arbitrary and capricious and not rationally related to any legitimate interest. Defendants argue Charleston's claim fails as a matter of law because he has not alleged the existence of a fundamental right or liberty interest.

The court agrees. Substantive due process bars the state from taking arbitrary action that results in the deprivation of a fundamental right. The court must identify the interest plaintiff claims to be constitutionally protected and determine whether history, legal traditions, and

practices permit characterization of the interest as "fundamental." *Galdikas v. Fagan*, 342 F.3d 684, 688 (7th Cir. 2003), *overruled on other grounds, Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Charleston's allegations do not reveal the existence of a fundamental right. The opportunity to receive a post-secondary education has not been recognized as a fundamental right entitled to Fourteenth Amendment protection. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-35 (1973) (education not a fundamental right); *Galdikas*, 342 F.3d at 688-89 (opportunity to receive a post-secondary education not a fundamental right). Nor is the opportunity to become a doctor a fundamental right guaranteed by the Fourth Amendment. *See Sung Park*, 692 F.3d at 832 (right to follow a particular career path not a fundamental right).

Further, no valid argument can be made based on the facts alleged that defendants' decision to dismiss Charleston from medical school was arbitrary and capricious or "shocks the conscience." Three committees reviewed the allegations against Charleston, and he twice appealed their decisions. These allegations suggest the university's decision was the product of careful and conscientious deliberation, not an action so egregious as to be arbitrary in the constitutional sense. The "shocks-the-conscience" analysis is not generally applicable to all substantive due process claims. *Khan v. Gallitano*, 180 F.3d 829, 836 (7th Cir. 1999). It applies only in limited circumstances not present here, such as high-speed chases, where a government actor's actions gratuitously place the plaintiff at risk of serious, immediate, and proximate harm. *Id.* No plausible inference may be drawn that Charleston's dismissal from medical school for alleged unprofessional conduct placed him in serious and immediate risk of danger.

Finally, Charleston's substantive due process claim fails because he seeks only monetary damages and defendants are protected from monetary liability. As mentioned, the Eleventh

Amendment protects the board, a state agency, against suit and precludes Charleston from seeking monetary damages from the individual university defendants in their official capacities. *See Kroll*, 934 F.2d at 907-08; *Feldman v. Ho*, 171 F.3d at 498. The individual university defendants are protected in their personal capacities by qualified immunity because Charleston has failed to allege a violation of a clearly established constitutional right. *Sonnleitner*, 304 F.3d at 716. Thus, Count II is dismissed with prejudice.

## IV. Count III - Equal Protection

Charleston asserts a "class-of-one" equal protection claim, claiming defendants retaliated against him; harassed, disciplined, and intimidated him; and dismissed him from medical school against his will. He seeks monetary and punitive damages from the individual university defendants and injunctive relief against all defendants. Compl. ¶¶ 49-51. Defendants argue Charleston's claim cannot proceed because his allegations do not show he was treated less favorably than any similarly situated person.

As previously mentioned, Charleston is barred by the Eleventh Amendment from proceeding with this claim against the board and from seeking monetary damages from the individual university defendants in their official capacities. *See Kroll*, 934 F.2d at 907-08; *Feldman*, 171 F.3d at 498. However, Charleston's "class-of-one" equal protection claim for injunctive relief against the individual university defendants in their official capacities and his claim for monetary damages against them in their personal capacities is not barred.

The Equal Protection Clause precludes states from denying to persons within their jurisdiction equal protection under the law. *See* U.S. Const. amend. XIV, § 1. State action that irrationally targets an individual for discriminatory treatment is prohibited under the "class-of-

8

one" theory of equal protection. Where, as here, a suspect class or fundamental right is not at issue, government action is presumed rational. *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005); *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). To maintain a class-of-one equal protection claim, a plaintiff must establish that a state actor intentionally treated him differently than others similarly situated without a rational basis. *Sung Park*, 692 F.3d at 833.

Charleston's "class-of-one" equal protection claim is deficient for failure to identify a similarly situated individual. For purposes of a "class-of-one" equal protection claim, a "similarly situated" person must be identical or comparable to the plaintiff in all material respects. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Charleston alleges he was treated "differently than those similarly situated medical students subjected to the [Urbana Committee] review process" and that defendants' actions exhibit deliberate indifference to or reckless regard for his constitutional rights "and other similarly situated students." Compl. ¶¶ 46, 48. These statements merely recite the elements for a "class-of-one" equal protection claim without factual support. Charleston pleads no facts suggesting that another medical student was subjected to the Urbana Committee review process, let alone for alleged conduct similar to Charleston's.

In opposing defendants' motion to dismiss, Charleston asserts he is aware of other students who were treated more favorably whom he can "easily identify." Opp'n at 18. He names one medical student from his ob-gyn rotation, Dr. Li, who turned in her course work on the same date he did but was not cited for a professionalism violation. *Id.* These assertions do not cure the claim's defects. A motion to dismiss is decided based on facts pleaded in the complaint; Charleston cannot amend his claim with additional facts asserted in his response to

9

defendants' motion. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Moreover, Charleston's description of Dr. Li's conduct does not establish she is identical or comparable to Charleston in all material respects. Charleston alleges he was accused not only of failing to timely complete course work, but also of committing errors in his written work, including plagiarism, failing to obtain physician signatures in his case log, spending four weeks of the ob-gyn rotation without an instructor, and failing to perform well enough to pass the rotation. Compl. ¶ 18. Charleston does not assert Dr. Li was accused of anything other than turning course work in late. Consequently, he has not shown that Dr. Li—or any other medical student—was similarly situated.

Further, Charleston fails to show defendants acted without a legitimate state interest. A university's decision to dismiss a student for unprofessional conduct requires an individualized assessment not readily comparable to the treatment of others. The university was in the best position to decide whether Charleston's dismissal suited its legitimate interest in introducing qualified medical professionals into the public to practice. Charleston's allegations are insufficient to raise a plausible inference that his dismissal was the result of intentional discrimination rather than an individualized academic decision. *Sung Park*, 692 F.3d at 833.

*Sung Park* is instructive. There, the Seventh Circuit affirmed the district court's dismissal of a former dental school student's "class-of-one" equal protection claim despite plaintiff's argument that other dental school students had committed more serious violations—*i.e.*, cheating—and received less harsh punishments. *Id.* Like Charleston, the plaintiff did not include allegations as to similarly situated individuals in her complaint. *Id.* The Seventh Circuit found no reason to assume other students had committed the same misconduct as

10

plaintiff, including failing classes, engaging in unprofessional exchanges with professors, and breaching the university's confidentiality policy. *Id.* This "defeat[ed] any plausible inference that [plaintiff's] expulsion could be traced to intentional discrimination" and "show[ed] that [the university's] decision to dismiss her, rather than some of her peers, was not irrational." *Id.*

Charleston's "class-of-one" equal protection claim is therefore deficient as a matter of law. The court need not address defendants' additional bases for dismissal, including qualified immunity. Count III is dismissed with prejudice.

## V. State Law Claims

Charleston asserts state law claims for breach of contract and intentional infliction of emotional distress. Defendants argue these claims are subject to state sovereign immunity and can only be brought in the Illinois Court of Claims. Even assuming this court has supplemental jurisdiction over Charleston's state law claims, the court declines to exercise jurisdiction. All federal claims over which this court has original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). The decision not to exercise supplemental jurisdiction is made in the interests of comity and fairness. No discovery has been conducted, and Charleston's breach of contract and intentional infliction of emotional distress claims are the type of claims typically brought in state court. Accordingly, Counts IV and V are dismissed without prejudice.

## CONCLUSION

Defendants' motion to dismiss is granted with prejudice as to Counts I, II, and III. Counts IV and V are dismissed without prejudice.

11

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

April 19, 2013